# In the United States Court of Federal Claims

No. 18-983L
(Filed: August 6, 2021)

|  |  |  |
|---|---|---|
| | ) | |
| STIMSON LUMBER COMPANY, | ) | |
| | ) | Rails-to-Trails; Attorneys' Fees and |
| Plaintiff, | ) | Costs; 42 U.S.C. § 4654; Lack of |
| | ) | Success; Reasonable Hours; |
| v. | ) | Reasonable Rate; Reasonable Costs |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*Thomas S. Stewart*, Kansas City, MO, for plaintiff. *Elizabeth G. McCulley*, Kansas City, MO, and *Steven M. Wald* and *Michael J. Smith*, St. Louis, MO, of counsel.

*David W. Gehlert*, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, with whom was *Jean E. Williams*, Acting Assistant Attorney General, for defendant.

## OPINION ON ATTORNEYS' FEES AND COSTS

**FIRESTONE**, *Senior Judge.*

Pending before the court in this Fifth Amendment takings case is plaintiff Stimson

Lumber Company's motion for attorneys' fees and costs. Stimson Lumber owns 17

parcels adjacent to a former railroad that operated in Oregon. Compl. ¶ 6, ECF No. 1;

Mot. at 1, ECF No. 52. Stimson Lumber asserts that the actions of the Surface

Transportation Board in issuing a Notice of Interim Trail Use pursuant to the National

Trails System Act, 16 U.S.C. § 1247(d), constituted a taking of its property rights.

Compl. ¶¶ 7-13. Following summary judgment briefing, the parties have tentatively

settled this case and agreed on $47,000 plus interest as total compensation. *See* Resp. at

4, ECF No. 56. The proposed settlement is currently being reviewed by officials at the Department of Justice. *See* Joint Status Report Order, ECF No. 59.

Stimson Lumber now moves for attorneys' fees and costs under the Uniform Relocation Assistance and Real Property Acquisition Policies Act ("URA"), 42 U.S.C. § 4654(c). Mot. at 1. Stimson Lumber seeks an award of $168,262.69 in attorneys' fees for 507.1 hours of work by three partners and two paralegals, as well as $37,697.87 in incurred costs. *Id.* at 7, 19. The government opposes the motion, arguing that the claimed hours, hourly rates, and costs are unreasonable and should be substantially reduced. *See* Resp. at 1-2.

For the reasons that follow, the court concludes that Stimson Lumber is entitled to an award of attorneys' fees and costs determined in accordance with the instructions set out in this opinion. The court finds that some of Stimson Lumber's requested fees and costs are compensable, while others are not. Stimson Lumber's motion is accordingly **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

On July 10, 2018, Stimson Lumber filed this rails-to-trails takings case. *See* Compl. ¶ 2. Stimson Lumber alleged that the government took its property interests in 17 parcels without just compensation in violation of the Fifth Amendment when an 81-mile rail corridor in Washington and Tillamook Counties, Oregon was converted to trail use after the Surface Transportation Board issued a Notice of Interim Trail Use on July 26, 2016, pursuant to the National Trails System Act. *Id.* ¶¶ 2-13.

Stimson Lumber's case was the last of four related cases alleging takings of property along the subject rail corridor.  Resp. at 2.  The first of those cases, *Loveridge v. United States*, No. 16-912L, was filed on August 1, 2016.  Resp. at 2.  The *Loveridge* plaintiffs are represented by the same counsel as Stimson Lumber:  Thomas S. Stewart, Elizabeth G. McCulley, and Steven M. Wald, of the Kansas City, Missouri law firm Stewart, Wald & McCulley, LLC.  The other two related cases are *Albright v. United States*, No. 16-1565L, and *Aeder v. United States*, No. 18-375L, which have been consolidated and have different counsel.  By the time Stimson Lumber filed its complaint on July 10, 2018, the parties in *Loveridge* and *Albright* had already briefed and argued the question of whether the 102 deeds at issue in those cases granted fee interests or easements to the railroad.  *See Loveridge v. United States*, 139 Fed. Cl. 122, 127-30 (2018).  Stimson Lumber's claims involved 8 of those 102 deeds.  Resp. at 2.

For purposes of the pending motion, the parties agree that this case can be broken into phases.  *See* Mot. at 11; Resp. at 20-27.  Phase 1 spans from May 4, 2018 through July 1, 2019.[1]  Mot. at 11; *see also id.*, Ex. A (billing entries); Notice, Ex. 1, ECF No. 60 (exhibits to the government's response, including billing entries).  During Phase 1, Stimson Lumber filed its complaint, implicating 8 of the deeds at issue in the briefing already completed in *Albright* and *Loveridge*.  Resp. at 2.  The court then issued its summary judgment decision in *Albright* and *Loveridge*, holding that 89 of the 102 deeds

---

[1]  The government states that Phase 1 begins on May 14, 2018, Resp. at 20 n.27, but the billing entries begin on May 4, 2018, Mot., Ex. A at 1; Notice, Ex. 1 at 1, ECF No. 60.  The court therefore begins Phase 1 on May 4, 2018.

at issue conveyed a fee simple interest that would not support a takings claim.[2]  Resp. at 2-3; *see Loveridge*, 139 Fed. Cl. at 132-196.  Following that decision, Stimson Lumber voluntarily dismissed its claims for 6 of its 17 parcels, leaving 11 parcels at issue.  Mot. at 11; Resp. at 20-22.

Phase 2, from July 2, 2019 through September 13, 2019,[3] is a short three-month period involving additional negotiations between the parties about the effect of the court's summary judgment decision in *Albright* and *Loveridge*.  Stimson Lumber voluntarily dismissed its claims for an additional 3 parcels during this phase, leaving 8 parcels still at issue.  Mot. at 11; Resp. at 22-23.

During Phase 3, from September 14, 2019 through May 12, 2020,[4] the parties briefed and the court issued its opinion on the scope of the easements for the remaining claims in all four related cases, including Stimson Lumber's claims for its 8 remaining

---

[2] After the *Loveridge* and *Albright* plaintiffs moved for reconsideration of this decision, the court granted reconsideration for 4 deeds.  *See Loveridge v. United States*, No. 16-912L, 2019 WL 495578, at *64 (Fed. Cl. Feb. 8, 2019).  The court's decisions were later affirmed by the United States Court of Appeals for the Federal Circuit.  *See Albright v. United States*, 838 F. App'x 512, 514 (Fed. Cir. 2020), *petition for cert. filed*, 2021 WL 3072909 (U.S. July 19, 2021) (No. 21-71).

[3] The government states that Phase 2 begins on July 1, 2019, Resp. at 22 n.28, but acknowledges in its exhibits that Phase 1 ends on July 1, 2019, and Phase 2 begins on July 2, 2019, Notice, Ex. 1 at 15.  The court therefore begins Phase 2 on July 2, 2019.

[4] Stimson Lumber ends Phase 3 on May 8, 2020, Mot. at 11, but includes billing entries through May 12, 2020 that involve the summary judgment briefing and decision at issue during this time period, *see* Resp. at 20 n.26; Mot., Ex. A at 21.  Therefore, the court ends Phase 3 on May 12, 2020.

parcels.[5]  Stimson Lumber prevailed on its claims regarding 5 of the 8 remaining parcels (and was unsuccessful as to 3 parcels).  Mot. at 11; Resp. at 23-25.

Phase 4, from May 13, 2020 through March 15, 2021,[6] encompasses Stimson Lumber's supplemental motion for summary judgment arguing that the easements at issue for the unsuccessful 3 parcels had been abandoned prior to the issuance of the Notice of Interim Trail Use.  Mot. at 11-12; Resp. at 25-27.  The court denied this supplemental motion.  *Id.*; *see also Loveridge v. United States*, 150 Fed. Cl. 143, 145 (2020).  Stimson Lumber therefore ultimately prevailed on its claims regarding 5 of its 17 parcels, or about 30% of its claims.  The parties then entered into settlement negotiations, and eventually tentatively agreed on $47,000 in just compensation plus interest.  *See* Resp. at 25-27; Reply at 13, ECF No. 57.  A final settlement is awaiting approval from appropriate Department of Justice officials.  *See* Joint Status Report Order, ECF No. 59.

Stimson Lumber then began work on the pending motion.  On April 7, 2021, Stimson Lumber filed this motion for attorneys' fees and costs, seeking $168,262.69 in

---

[5] The briefing on the scope of the easements involved only 7 of Stimson Lumber's 8 remaining parcels.  Before the briefing began, the government had already stipulated that the deed for one parcel conveyed an easement to the railroad that was limited to railroad purposes, such that a taking had occurred.  *See* Pl.'s Resp. & Reply at 1 n.2, ECF No. 26.

[6] The government ends Phase 4 on November 30, 2020, "when the parties reached agreement on the interest rate to be used" in awarding just compensation.  Resp. at 25 n.30.  The government uses a new Phase 5 to encompass fee briefing as well as 8.1 hours of other time entries.  *Id.* at 26.  Stimson Lumber ends Phase 4 on April 6, 2021, a day before Stimson Lumber filed its motion for attorneys' fees and costs.  Mot. at 11.  The court will address Stimson Lumber's request for fees on its fee briefing separately, and therefore ends Phase 4 on March 15, 2021, a day before the first billing entry Stimson Lumber identifies as the start of its work on its motion for fees and costs.  *See* Resp. at 26; Mot., Ex. A at 30; Notice, Ex. 1 at 34.

fees and $37,697.87 in costs.  Mot. at 19.  In response, the government argues that

Stimson Lumber should only be awarded $78,508.08 in fees and $12,249.31 in costs.

Resp. at 27; Notice, Ex. 1 at 36, Ex. 2 at 5.  According to the government, Stimson

Lumber's requested fees and costs are unreasonable and should be reduced for five

reasons:  (1) the hourly rates charged by two of Stimson Lumber's attorneys, Mr. Stewart

and Ms. McCulley, are unreasonable; (2) some of the requested fee hours are not

compensable because they are redundant or unnecessary; (3) the total requested fee hours

must be reduced for lack of success on certain parcels; (4) some of the incurred costs are

not compensable because they are unreasonable or unnecessary; and (5) the total costs

incurred must also be reduced to account for lack of success on certain parcels.  Resp. at

5-27.  Briefing on the motion for attorneys' fees and costs was completed on May 19,

2021.  The court has determined that oral argument is not necessary.

## II.    LEGAL STANDARDS

The award of attorneys' fees and costs in this case is governed by the URA.  *See*

*Bywaters v. United States*, 670 F.3d 1221, 1224 (Fed. Cir. 2012).  The URA provides that

the court "reimburse" each "plaintiff" for "reasonable costs, disbursements, and

expenses, including reasonable attorney, appraisal, and engineering fees, actually

incurred . . . ."  42 U.S.C. § 4654(c).

The lodestar calculation—the number of hours reasonably expended on the

litigation multiplied by a reasonable hourly rate—provides the framework for

determining an award of attorneys' fees under the URA.  *See e.g.*, *Bywaters*, 670 F.3d at

1226-29; *Haggart v. United States*, 149 Fed. Cl. 651, 659 (2020).  The lodestar method

requires determining both the reasonable hourly rate for each attorney and the reasonable number of hours they expended on the litigation. *See, e.g.*, *Haggart*, 149 Fed. Cl. at 659; *Campbell v. United States*, 138 Fed. Cl. 65, 70 (2018) (citing *Bywaters*, 670 F.3d at 1226-28). The plaintiff bears the burden of documenting the hours expended and establishing the reasonableness of the requested hours and the attorneys' hourly rates. *See, e.g.*, *Campbell*, 138 Fed. Cl. at 70, 73; *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Plaintiffs are also entitled under the URA to reimbursement of costs incurred. 42 U.S.C. § 4654(c). These expenses must be "reasonable and necessary," and a plaintiff must provide adequate documentation to support the request. *Bratcher v. United States*, 136 Fed. Cl. 786, 801 (2018). The court has "considerable discretion" in determining the number of hours reasonably expended, the reasonable hourly rate, and reasonable costs. *Bywaters*, 670 F.3d at 1228-29; *see also, e.g.*, *Bratcher*, 136 Fed. Cl. at 801.

## III.   DISCUSSION

As noted above, the government challenges the reasonableness of Stimson Lumber's requested hourly rates, hours, and costs. The court addresses each in turn.

### A.   Reasonable Hourly Rates

"Reasonable hourly rates under the lodestar method are 'calculated according to the prevailing market rates in the relevant community.'" *Haggart*, 149 Fed. Cl. at 665 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). Reasonable hourly rates should be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11; *see also, e.g.*, *Bratcher*, 136 Fed. Cl. at 792. A plaintiff must support the requested hourly

rate for each attorney with "something more than an attorney's own affidavit." *Preseault v. United States*, 52 Fed. Cl. 667, 678 (2002) (quoting *Raney v. Fed. Bureau of Prisons*, 222 F.3d 927, 938 (Fed. Cir. 2000)) (internal alteration omitted).  In determining a reasonable rate, the court may refer to declarations made by other attorneys about the prevailing hourly rates in a particular geographic area and may also rely on its own expertise to determine applicable prevailing rates.  *Haggart*, 149 Fed. Cl. at 659.

In this case, the parties agree that the "relevant community" is Kansas City, Missouri, the location of Stimson Lumber's counsels' office.[7]  *See* Mot. at 13-14. However, the parties disagree as to the reasonableness of the Kansas City rates requested by Stimson Lumber for two partners, Mr. Stewart and Ms. McCulley.  Resp. at 6-8. Stimson Lumber seeks a $595 hourly rate for Mr. Stewart, a senior partner at Stewart, Wald & McCulley who has been practicing for 42 years, and a $495 hourly rate for Ms. McCulley, a partner at Stewart, Wald & McCulley who has been practicing for 20 years. Mot. at 13, Ex. C ¶¶ 31-32.  These rates are Stewart, Wald & McCulley's historic 2015 rates, established when the firm was formed and applicable to the time period of this case.  *Id.*, Ex. C ¶¶ 31-32.  In support of these rates, Stimson Lumber provides the

---

[7] The Federal Circuit has adopted the "forum rule" to identify the "relevant community."  *Avera v. Sec'y of HHS*, 515 F.3d 1343, 1348-49 (Fed. Cir. 2008).  Under that rule, the location of the trial court is typically the designated forum, which here is Washington, DC.  *Id.*  There is a "limited exception" where the bulk of the work is performed outside of the forum and there is a "very significant" difference between the forum rate and the local rate.  *Id.*  The court need not address this exception because here Stimson Lumber agrees that Kansas City, Missouri, not Washington, DC, is the relevant community.

declaration of Mr. Stewart, as well as three declarations from local experienced practitioners. *Id.* at 14-15, Exs. C-F.

The government argues that Stimson Lumber's requested hourly rates for Mr. Stewart and Ms. McCulley are unreasonable because they do not reflect the "prevailing market rate" in Kansas City. Resp. at 6-8. Instead, the government argues that the "median rate" for partners at Kansas City law firms should be used, as reported in the Wolters Kluwer 2018 Real Rate Report. *Id.* at 6-8; Notice, Ex. 4 at 4. This results in an hourly rate of $460 for Mr. Stewart and $353 for Ms. McCulley.[8] *Id.*

After consideration of these arguments, the court concludes that Stimson Lumber's requested hourly rates for Mr. Stewart and Ms. McCulley are reasonable. The requested rates are well-supported by Mr. Stewart's own declaration documenting the experience and qualifications of Mr. Stewart and Ms. McCulley, Mot., Ex. C ¶¶ 27-38, as well as the declarations submitted by the three local practitioners, including a former federal magistrate judge who is now in private practice, *id.*, Exs. D-F. The prevailing market rates identified by the local practitioners ranged from about $400 to over $900 per hour for partners. *See* Mot., Ex. D ¶¶ q, t; *id.*, Ex. E ¶¶ 3-5; *id.*, Ex. F ¶¶ 5-6. The local practitioners conclude that Stimson Lumber's requested rates are in line with these prevailing rates. *Id.*, Ex. D ¶ u; *id.*, Ex. E. ¶ 3; *id.*, Ex. F ¶ 6. In fact, Mr. Stewart and

---

[8] The government also cites a 2018 Missouri Lawyers Weekly survey that reported a median partner rate for Kansas City, Missouri of $440 per hour. Resp. at 6 & n.4; Notice, Ex. 5. However, the government does not use this rate because that survey "did not distinguish partners by experience" and because the Wolter Kluwer rates are derived from "more robust data." Resp. at 6 n.4.

Ms. McCulley's rates fall on the low end of the range identified by the local practitioners as the prevailing market rates for partners.[9]  In addition to their experience and knowledge of the local market, the practitioners base their conclusions on a 2017 survey by Missouri Lawyers Weekly as well as recent decisions in Missouri that awarded similar hourly rates.  *See, e.g.*, *id.*, Ex. D ¶¶ q, t (listing fee awards and stating "a 2017 survey by Missouri Lawyers Weekly of prevailing hourly rates for lawyers in the Kansas City and St. Louis metropolitan area are comparable to those requested by Thomas Stewart and his litigation team members"); *id.*, Ex. E ¶ 4 (providing examples where "[l]ocal courts in litigation involving fee-shifting statutes" awarded similar rates).  The rates requested by Stimson Lumber for Mr. Stewart and Ms. McCulley were also recently approved by this court in *Haggart v. United States*, 149 Fed. Cl. at 665; *see also* Mot. at 15-16, based on the same supporting declarations.

The government's requested rates, on the other hand, are lower than the rates of $475 per hour for Mr. Stewart and $375 per hour for Ms. McCulley approved seven years ago by this court, covering billing entries beginning 12 years ago.  Reply at 3; Op. on Fees and Costs at 9, *Adkins v. United States*, No. 09-503L, ECF No. 140 (Fed. Cl. Jan. 30, 2014) ("The court finds that the work of Mr. Stewart and Ms. McCulley on rails-to-

---

[9] The requested rates are also lower or about equal to rates recently approved by this court in other rails-to-trails cases for attorneys located in St. Louis, Missouri.  *See Campbell*, 138 Fed. Cl. at 78 (awarding St. Louis partners up to $749 per hour); *McCarty v. United States*, 142 Fed. Cl. 616, 624 (2019) (awarding St. Louis partners up to $581 per hour for 2016-2017).  However, in those cases, the court determined that the District of Columbia, not St. Louis, was the relevant forum out of which to determine reasonably hourly rates.  *Campbell*, 138 Fed. Cl. at 76; *McCarty*, 142 Fed. Cl. at 623.

trails cases from 2009 to 2013 should be reimbursed at the rate of $475 and $375 per hour, respectively."); *see also Thomas v. United States*, No. 10-54L, 2014 WL 1347221, at *4 (Fed. Cl. Apr. 4, 2014); *Greenwood v. United States*, 131 Fed. Cl. 231, 240-41 (2017); *Gregory v. United States*, 110 Fed. Cl. 400, 406 (2013); Reply at 3 n.7 (listing other cases).  In addition, in determining reasonable hourly rates, the court must consider whether the "requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11.  Unlike the rates supported by the local practitioners' declarations, the government's proposed rates are derived from one survey and do not account for Mr. Stewart or Ms. McCulley's experience, specific rates awarded in Missouri under fee-shifting statutes, or the specialized nature of Trails Act cases.  *See Gregory*, 110 Fed. Cl. at 406 (noting the specialized nature of rails-to-trails cases); *Haggart*, 149 Fed. Cl. at 665 (rejecting an argument referencing survey data in favor of the "first-hand experience" detailed in the submitted declarations).  For these reasons, the court concludes that Stimson Lumber's requested rates for Mr. Stewart and Ms. McCulley are supported and reasonable.

### B.    Reasonable Hours

Stimson Lumber bears the burden of demonstrating that the number of hours submitted for award represents a reasonable amount of time expended on the litigation. *See, e.g.*, *Campbell*, 138 Fed. Cl. at 70 (citing *Bywaters*, 670 F.3d at 1229).  Stimson Lumber may not be compensated for hours that are "excessive, redundant, or otherwise unnecessary."  *Greenwood*, 131 Fed. Cl. at 241 (quoting *Hensley*, 461 U.S. at 434).

11

Moreover, Stimson Lumber should not be awarded fees for hours spent on unsuccessful claims, and the court may in its discretion reduce the number of claimed hours to account for a lack of success. *Biery v. United States*, 818 F.3d 704, 712 (Fed. Cir. 2016); *see also, e.g.*, *Gregory*, 110 Fed. Cl. at 403-04.

Stimson Lumber is requesting 507.1 hours for the three-year time period covering this case, amounting to $168,262.69 in fees.[10]  Of those hours, 175.8 are billed by Mr. Stewart, 81.4 hours are billed by Ms. McCulley, and 9.0 hours are billed by Mr. Wald, another partner.  Mot. at 7.  The remaining 240.9 hours are split between two paralegals. *Id.*  The government argues that the requested hours should be reduced as redundant or unnecessary as well as for lack of success on certain parcels.  Resp. at 9-13, 17-27.  The court will discuss each of the government's arguments in turn.

### 1.      Reductions for Overlap with *Loveridge*

The government first argues that 46.50 hours of work billed in this case is duplicative of work done in *Loveridge*, where Stewart, Wald & McCulley also represents the plaintiffs.  Resp. at 9-10.  Specifically, the government contends that the summary judgment briefs filed in this case regarding the scope of the easements granted to the railroad were nearly identical to the briefs filed in *Loveridge* and recycled earlier work done in *Loveridge*. *Id.*  The government therefore argues that 46.50 hours spent in this case on the scope of the easement briefs should be reduced by 50%. *Id.*

---

[10] The 507.1 hours requested actually amount to $191,956.50 in fees.  Mot. at 3, 12.  However, as discussed in more detail below, Stimson Lumber agrees that some of these hours are not compensable because they were spent on unsuccessful briefing or claims, and therefore Stimson Lumber requests only $168,262.69 in fees. *Id.* at 12.

In reply, Stimson Lumber argues that the summary judgment billing entries in this case are not duplicative of work done in *Loveridge*. Reply at 8-10. Instead, Stimson Lumber's "counsel took the total hours on any particular day and divided them at that time—in other words the time entries were recorded currently with the work in the normal course of business, and divided at that time between the two cases [*Stimson Lumber* and *Loveridge*] as appropriate, so there is no duplication of time whatsoever." *Id.* at 9. Stimson Lumber notes one mistake—2.20 hours should have been allocated to *Loveridge* on April 22, 2020. *Id.* at 9 n.21. Otherwise, Stimson Lumber argues that the 46.50 hours should not be reduced. *Id.* at 8-10.

The court concludes that the 46.50 hours are fully reimbursable, aside from the 2.20 hours that were requested in error. The government assumes that the requested hours also reflect work done in *Loveridge*, Resp. at 9, but Stimson Lumber explains that it has already divided this work between the two cases, Reply at 9-10. While it is true that the summary judgment briefs filed in both cases are similar, the briefs filed in this case necessarily involved work specific to Stimson Lumber. *See* Resp. at 10 (recognizing that the work on summary judgment involved "original analysis of the deeds at issue" and differed from *Loveridge* on "the application of . . . law to the deeds at issue").

In addition, the requested hours are not unreasonable. The government does not argue that the requested hours are excessive. Even if the challenged 46.50 hours are tripled, the combined time spent on summary judgment briefing for *Loveridge* and this case would be 139.50 hours. *Cf.* Reply, Ex. H-1 (comparing corresponding summary judgment billing entries in *Loveridge* and *Stimson Lumber*). This court has previously

determined that a similar number of hours for summary judgment briefing was not excessive. *Thomas*, 2014 WL 1347221, at *4 (holding that spending 128 hours on summary judgment briefing was not excessive). For these reasons, the court concludes that the 46.50 hours spent on the scope of the easement summary judgment briefing are compensable, with no reductions except for the 2.20 hours requested in error.

### 2.    Duplicative Partner Work

The government next argues that some of Stimson Lumber's requested hours reflect duplicative partner work and must be reduced. First, the government contends that, throughout their work on this case, Mr. Stewart and Ms. McCulley billed about 27 hours for identical tasks, conferences with each other, or reviewing each other's work, which, according to the government, is unreasonable. Resp. at 11. The government argues for a 25% reduction to these 27 hours. *Id.* Second, the government contends that both Mr. Stewart and Ms. McCulley travelled to Portland for appraisal inspections in October 2019, which the government argues is unnecessary duplication of partner work. Resp. at 11-12. The government proposes deducting 19.0 hours of Ms. McCulley's time billed for this purpose. *Id.*; *see also* Notice, Ex. 1 at 22. Third, the government proposes deducting as duplicative the only 9.0 hours billed by Mr. Wald in this case for a June 27, 2018 appraisal site visit that was also attended by Mr. Stewart. Resp. at 11 n.14. Stimson Lumber replies that these hours are not duplicative and should be fully reimbursed because in this case it was "necessary to collaborate with co-counsel, each attorney had a specific role to play and played it well," and a small amount of duplication in complex litigation is reasonable. Reply at 10.

The court agrees with Stimson Lumber that most of these hours are compensable, with two exceptions described below.  The hours identified by the government as the "duplicative" work of two partners include site visits, conferences between partners, editing pleadings, and reviewing deeds, emails, and court orders.  *See, e.g.*, Notice, Ex. 1 at 3, 7, 8 (identifying certain billing entries as duplicative or consisting of partner conferences); Reply, Ex. I (compiling the allegedly duplicative billing entries).  Upon a review of the time records, the court concludes that the number of hours spent by more than one partner on this work is not unreasonable.  *See Bratcher*, 136 Fed. Cl. at 795 (finding that 18.9 hours of duplicative attorney work was reasonable).  The cases relied on by the government to argue otherwise are distinguishable because they involved more hours and counsel than this case, as well as other issues that would warrant a reduction in hours, such as excessive billing.  *See* Resp. at 11; *Preseault*, 52 Fed. Cl. at 680 (applying a 20% reduction in total hours for a "substantial amount of effort" devoted to the discussion of the case across 9 organizations with 14 different attorneys, as well as for excessive and unnecessary hours billed); *Raymo v. Sec'y of HHS*, No. 11-654V, 2016 WL 7212323, at *17 (Fed. Cl. Spec. Mstr. Nov. 2, 2016) (reducing fees requested by 40% for duplicative billing entries across attorneys, erroneous billing entries, and excessive hours for the tasks billed).

For these reasons, the court in its discretion concludes that the approximately 27 hours identified by the government as "duplicative" work between partners are fully reimbursable.  For the same reasons, the court rejects the government's argument that the 19.0 hours Ms. McCulley spent traveling to and accompanying Mr. Stewart on the

October 2019 appraisal inspections should be deducted.  However, the government alternatively requests that the court apply a 50% reduction to the 9.0 hours of flight time Ms. McCulley charged for this travel because she did no work while traveling.  Resp. at 12 n.16.  Stimson Lumber does not respond to this argument, *see* Reply at 10, and the court agrees with the government.  Ms. McCulley bills this time as "Trip from Kansas City to Oregon for site visits and conference with David Matthews regarding comparable sales," and "Return trip from Portland to Kansas City following site visits."  Notice, Ex. 1 at 22 (billing entries dated October 8 and October 11, 2019); *see also* Reply, Ex. I at 3.  Because it appears Ms. McCulley did no work while traveling, the court reduces these 9.0 hours by 50%.  *See Thomas*, 2014 WL 1347221, at *4 (applying a 50% reduction for travel time); *Town of Grantwood Village v. United States*, 55 Fed. Cl. 481, 486 (2003) ("We agree with defendant's suggestion that travel time should only be compensated at a 50% rate.").

Finally, the court in its discretion concludes that the 9.0 hours billed by Mr. Wald for a June 27, 2018 site visit are unreasonable and must be deducted.  Mr. Wald billed only these 9.0 hours in this case, *see* Mot. at 7, Ex. A at 1 (billing entry dated June 27, 2018), making the court question the necessity of Mr. Wald's participation in this site visit with Mr. Stewart.  In its briefing, Stimson Lumber fails to explain the necessity of Mr. Wald's travel for this case, stating only that Mr. Wald "traveled to Oregon in late June to work on *Loveridge* and facilitate the transfer to [Stewart, Wald & McCulley's] Kansas City office, and his work on June 2[7], 2018 was invaluable."  Reply at 17.

Because Stimson Lumber has failed to support Mr. Wald's billed hours as necessary, the court finds that these 9.0 hours are not reimbursable.

### 3.    Administrative Tasks

The government next argues that 22.4 hours of time entries by paralegals must be deducted because those hours were spent on purely "administrative" tasks.  Resp. at 12-13.  Stimson Lumber replies that the tasks are not administrative in nature.  Reply at 10-11.  The court agrees with Stimson Lumber.

Tasks such as proofreading, assembling, photocopying, and mailing are non-compensable administrative work.  *See, e.g.*, *Biery v. United States*, No. 07-693L, 2014 WL 12540517, at *4 (Fed. Cl. Jan. 24, 2014), *aff'd* 818 F.3d 704 (Fed. Cir. 2016). However, the "administrative" tasks identified by the government do not fall within these categories.  Instead, they include compiling information for claims books and joint status reports, preparing documents for site visits, requesting deeds, gathering contingency fee agreements, and organizing initial disclosure documents.  *See* Reply, Ex. J (compiling all allegedly "administrative" billing entries).  This court has previously determined that hours spent on these types of tasks are reasonable when reimbursed at paralegal rates. For example, this court has previously found in a rails-to-trails case that "compiling plaintiff data from" mapping systems was legal, not "administrative," in nature because that task involved "properties whose boundaries must be defined to establish liability and damages."  *McCarty v. United States*, 142 Fed. Cl. 616, 627 (2019).  In addition, this court has previously determined that hours billed "managing client data, preparing exhibits, preparing a case law database, and compiling documents for oral argument" are

appropriately reimbursed at paralegal rates.  *Id.*  For these reasons, the court concludes that the 22.4 hours identified by the government as "administrative" are fully reimbursable at the requested paralegal rates.

### 4.  Reductions to Hours for Lack of Success

As noted above, in determining fee awards under the URA, a court may in its discretion reduce the number of hours deemed reasonable to account for lack of success obtained.  *See, e.g.*, *Gregory*, 110 Fed. Cl. at 403-04; *Biery*, 2014 WL 12540517, at *5; *see also Bywaters*, 670 F.3d at 1228-32; *Biery*, 818 F.3d 712.  Hours spent on unsuccessful claims that are "distinct in all respects from [plaintiff's] successful claims" should be excluded from the lodestar calculation.  *Hensley*, 461 U.S. at 440.  When multiple claims are brought that involve overlapping questions of law, "it may be difficult, if not impossible, to separate out the hours expended on each claim.  However, . . .  a court 'may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.'"  *Biery*, 818 F.3d at 712.  The court should not, however, reduce hours in "a rigid, mechanical way."  *Id.* (citing *Hubbard v. United States*, 480 F.3d 1327, 1333-34 (Fed. Cir. 2007)).

Here, Stimson Lumber was successful in proving takings for 5 of the 17 parcels of land involved, a success rate of about 30%.  However, as an initial matter, Stimson Lumber argues that any reduction in its requested hours based on its lack of success should be "minimal" under the facts of this case.  Mot. at 8.  This is because, according to Stimson Lumber, rather than pursuing 17 separate claims for each parcel in its complaint, it was instead pursuing "one overall claim."  *Id.* at 9.  Stimson Lumber argues that, for

18

this reason, it is too "difficult" to separate hours expended on each claim when all hours were "expended on the overall claim brought by Stimson Lumber that proved to be successful." *Id.*

The government responds that "no analytical basis" supports Stimson Lumber's argument that this case is different because there is only one plaintiff. Rather, the government contends that unsuccessful claims are still distinct from successful claims because they involve different pieces of property. Resp. at 18-19.

The court agrees with the government. The Supreme Court has instructed that, in determining a fee award, "the most critical factor is the degree of success obtained" on each claim. *Hensley*, 461 U.S. at 436. This is true even where "the plaintiff's claims were interrelated," *id.*, or where "it may be difficult" to "separate out the hours expended on each claim," *Biery*, 818 F.3d at 712. In rails-to-trails cases, "each property represents an individual claim and must be treated as such." *Biery*, 2014 WL 12540517, at *5 n.6. Indeed, this court has recognized that in rails-to-trails cases, prevailing claims are "readily distinguishable" from unsuccessful claims because the unsuccessful claims "involve[] different pieces of property and therefore different property interests." *Bratcher*, 136 Fed. Cl. at 793. As a result, courts in rails-to-trails cases routinely consider plaintiffs' success rate on a per parcel basis when reducing hours for lack of success. *See, e.g.*, *Gregory*, 110 Fed. Cl. at 403-06; *Biery*, 2014 WL 12540517, at *5. The court sees no reason why this analysis should be different for cases like this one involving one plaintiff that owns multiple parcels, as opposed to cases involving multiple plaintiffs that own multiple parcels.

However, where, as here, it may be difficult to separate the hours spent on unsuccessful claims from the hours spent on successful claims, the court may in its discretion apply a reduction to claimed hours that accounts for the overlap in the work done on successful and unsuccessful claims. *Biery*, 818 F.3d at 712. For this purpose, the parties submit, and the court agrees, that it is proper to divide the time spent on this case into phases, described in Part I above, to analyze the varying nature of the work involved in each phase. The court reduces the requested hours for lack of success for each phase, in addition to the deductions noted above, as follows.

### a.   Phase 1 (May 4, 2018 – July 1, 2019)

Stimson Lumber requests 224.60 hours in Phase 1 for the work of three partners and two paralegals. *See* Notice, Ex. 1 at 1-15. During Phase 1, Stimson Lumber filed its complaint and the court issued its summary judgment decision in *Loveridge* and *Albright*, implicating the deeds at issue in this case. Based on that decision, Stimson Lumber voluntarily dismissed 6 parcels, leaving 11 parcels. Mot. at 11; Resp. at 20-22. The tasks performed during this phase include preparation of the complaint, site visits, analysis of the deeds at issue, and claims book work. *See* Mot., Ex. A at 1-13.

The government seeks a 60% reduction in the hours billed during this phase, to account for Stimson Lumber's ultimate lack of success on 70% of its parcels while recognizing some overlap in the work done for the unsuccessful and successful claims. Resp. at 21. Stimson Lumber argues that no reduction is appropriate because the work done during this phase applied to all parcels. *See* Reply at 14-15. However, in its reply,

Stimson Lumber proposes a "reasonable reduction" of 35%, to account for the lack of success on the 6 parcels dismissed during this phase.  *Id.* at 15.

The court in its discretion reduces the requested hours in Phase 1 by 50%. Stimson Lumber was ultimately unsuccessful as to 12 of the 17 parcels at issue, or 70% of its claims.  Some of the work done during Phase 1, such as the claims book work, is claim-specific.  However, some of the research, analysis, and drafting during this period was necessary for all claims, and this early work cannot be parsed on a parcel-by-parcel basis.  *See Gregory*, 110 Fed. Cl. at 404-05 (reducing hours by 50% in the early stages of a case, even though plaintiffs were unsuccessful as to about 92% of their claims); *Thomas*, 2014 WL 1347221, at *3 (recognizing overlapping work, reducing hours by 23.5% even though plaintiffs were unsuccessful as to 47% of their claims).  Considering the overlap in work done on successful and unsuccessful claims during Phase 1, the court finds a 50% reduction appropriate.

### b.    Phase 2 (July 2, 2019 – September 13, 2019)

Stimson Lumber requests 27.90 hours in this phase for the work of two partners and two paralegals.  *See* Notice, Ex. 1 at 15-19.  Phase 2 is a short three-month period involving additional negotiations between the parties about the effect of the court's summary judgment decision in *Albright* and *Loveridge*.  Stimson Lumber voluntarily dismissed its claims for an additional 3 parcels during this phase.  Mot. at 11; Resp. at 22-23.  The hours billed during this period went to communications between the parties' counsel and work on a damages calculation spreadsheet.  *See* Mot., Ex. A at 13-16.

The government argues for a 45% reduction in hours for this phase, reasoning that 6 of the 11 remaining parcels were unsuccessful (55%) but that some overlap in work done for unsuccessful and successful parcels was necessary.  Resp. at 22-23.  Stimson Lumber contends that no reduction in hours is appropriate but suggests in its reply that a reasonable reduction would be 27.5%, representing the 3 of 11 parcels dismissed during this phase.  Reply at 15.

The court in its discretion reduces the hours in Phase 2 by 45%.  Of the 11 parcels still at issue, Stimson Lumber was only successful as to 5.  Many of the hours billed during this period identify the specific parcels and much of the work done during this phase is segregable in nature.  *See, e.g.*, Mot., Ex. A at 13 (billing entries identifying specific parcels).  Recognizing, however, that this work was not entirely claim-specific, the court reduces the number of hours by 45%.  *See Gregory*, 110 Fed. Cl. at 405 (reducing hours for claim-specific work by 80% where 92% of the claims were unsuccessful); *see also Biery*, 2014 WL 12540517, at *5 (reducing hours by 30% where 40% of the claims were unsuccessful); *Bratcher*, 136 Fed. Cl. at 793 (reducing hours by 40% where 50% of the claims were unsuccessful).

### c.    Phase 3 (September 14, 2019 – May 12, 2020)

Stimson Lumber requests 128.20 hours for this phase for the work of two partners and two paralegals.  *See* Notice, Ex. 1 at 19-24.  During Phase 3, the parties briefed and the court issued its opinion on the scope of the easements then at issue.  Stimson Lumber prevailed on its claims regarding 5 of the 8 remaining parcels (and was unsuccessful as to 3 parcels).  Mot. at 11; Resp. at 23-25.  Much of the work done during this period was

spent preparing and presenting oral argument on the summary judgment filings.  *See* Mot., Ex. A at 16-21.

The government argues that a 28% reduction in hours is appropriate for this phase, where Stimson Lumber was unsuccessful as to 38% of the remaining 8 claims, but also accounting for overlapping work.  *See* Resp. at 25; Reply at 15.  Stimson Lumber argues that an 18.75% reduction is appropriate, half of the percentage of unsuccessful claims. *Id.*

The court in its discretion reduces the hours spent in this time period by 20%. While this work involved the claims of the 3 unsuccessful parcels, the time during this period was spent on summary judgment briefing necessary for all of the remaining claims.  Accounting for this overlap, the court finds that a 20% reduction in hours is reasonable.  *See Gregory*, 110 Fed. Cl. at 405.

### d.     Phase 4 (May 13, 2020 – March 15, 2021)

Stimson Lumber requests 96.0 hours in Phase 4 for the work of two partners and two paralegals.  *See* Notice, Ex. 1 at 25-34.  This phase encompasses Stimson Lumber's unsuccessful supplemental motion for summary judgment, described above.  After the court denied this motion, the parties entered into settlement negotiations, and eventually tentatively agreed on $47,000 in just compensation plus interest.  Resp. at 25-27; *see* Mot. at 11.

The parties agree that any hours related to the unsuccessful supplemental summary judgment motion are not reimbursable.  *See* Mot. at 11 ("[T]here [are] readily identifiable and distinct hours related to the supplemental summary judgment briefing on state law

23

abandonment that should be deducted."); Resp. at 25.  However, Stimson Lumber

appears to include some hours spent on the unsuccessful motion in its request.  *See* Mot.,

Ex. A at 22-27 (billing entries, stating, for example, "Work on and drafting motion for

partial summary judgment on state law abandonment for 3 parcels"); Resp. at 25.  The

court concludes that any hours spent on the unsuccessful supplemental motion are not

reimbursable and should be deducted.  *See Greenwood*, 131 Fed. Cl. at 242 ("[P]laintiffs

may not recover fees associated with time spent on unsuccessful arguments.").

Otherwise, the parties agree, and the court concurs, that no reduction is appropriate for

the remaining hours requested for this phase, which mostly involved settlement

discussions.  *See* Resp. at 25-26.

### e.  Briefing on Motion for Attorneys' Fees and Costs

Finally, Stimson Lumber includes in its opening motion for attorneys' fees and

costs a request for approximately 30 hours spent on researching and drafting that motion.

Mot., Ex. A at 30-31; Notice, Ex. 1 at 34-36.  Stimson Lumber also states that its counsel

has "spent an additional 20 hours or so . . . just having to write [the] reply brief," for a

total of approximately 50 hours spent on the fee briefing.  Reply at 16.  Stimson Lumber

argues that these hours are reasonable and should be reimbursed.  *Id.*  The government

responds that any hours spent on the fee briefing should be reduced based on the degree

of success Stimson Lumber achieves on its motion.  Resp. at 26-27.

The court agrees with Stimson Lumber that, subject to the submission of

supporting documentation, the approximately 50 hours spent on the fee briefing are

reasonable.  The hours requested are lower than or equal to hours determined to be

reasonable for fee motions in other rails-to-trails cases.  *See, e.g.*, *Biery*, 2014 WL 12540517, at *4 (finding 80 hours compensable); *Bratcher*, 136 Fed. Cl. at 797 (finding approximately 50 hours compensable).  Moreover, the court in its discretion declines to reduce the number of hours based on any unsuccessful arguments made in the fee motion.  In contrast to other cases where the number of hours spent on fee litigation were reduced, Stimson Lumber did not devote an unreasonable number of hours or a significant portion of its fee briefing to an unsuccessful argument.  *See id.*

However, Stimson Lumber does not provide documentation to support its request for fees on work done after its April 7, 2021 motion for attorneys' fees and costs was filed.  The court therefore orders below that the parties file a joint status report that includes documentation supporting Stimson Lumber's request for additional fees.

### C.     Reasonable Costs

Finally, Stimson Lumber requests $37,697.87 in costs.  Mot. at 17.  Under the URA, plaintiffs are entitled to the reimbursement of incurred costs.  42 U.S.C. § 4654(c).  These costs, however, must be "reasonable and necessary."  *Bratcher*, 136 Fed. Cl. at 801 (internal quotation omitted).  Moreover, a request for costs must be supported by adequate documentation that includes sufficient detail to allow the court to determine whether the expenses are reasonable.  *Id.*  The court may in its discretion reduce an award of costs to account for the lack of success obtained in the litigation.  *See Bratcher*, 136 Fed. Cl. at 801; *Biery*, 2014 WL 12540517, at *8; *Gregory*, 110 Fed. Cl. at 407.

Here, the government argues that some of Stimson Lumber's costs should be reduced as unreasonable and unnecessary.  Resp. at 13-17.  The government further

argues that Stimson Lumber's costs should be reduced, as with attorneys' fees, for lack of success.  *Id.* at 20-27.  The court addresses each argument below.

### 1.  Unreasonable and Unnecessary Costs

The government objects to three categories of costs that it argues are unnecessary and unreasonable:  (1) travel expenses; (2) miscellaneous expenses; and (3) expert expenses.  The court discusses each in turn.

### a.  Travel Expenses

Stimson Lumber seeks reimbursement for $6,852.34 in travel expenses.  Reply at 16.  The government argues that four types of requested travel expenses are unreasonable and unnecessary in this case and must be deducted:  (1) Mr. Wald's travel expenses in June 2018; (2) Mr. Stewart's expenses for dinners during travel for the case; (3) the expenses for one of two paralegals' travel to Oregon in June 2018, where neither paralegal billed any time on the trip; and (4) Ms. McCulley's travel expenses for the October 2019 appraisal trip with Mr. Stewart.  Resp. at 13-14.  Stimson Lumber in reply argues that all of these expenses were reasonable.  Reply at 16-18.

The court in its discretion concludes that Stimson Lumber's travel expenses are compensable, with the exception of Mr. Wald's travel in 2018.  As discussed above, the court questions the necessity of Mr. Wald's travel billed to this case, where Mr. Wald billed no other time on the case.  *See supra* Part III.B.2.  The court therefore determines that Mr. Wald's expenses related to this trip are not compensable in this case.

Otherwise, upon a review of the record, the court concludes that the remaining travel expenses are reasonable.  Contrary to the government's argument, the court does

not find Mr. Stewart's requested meal expenses excessive.  Stimson Lumber has

explained that these meals were split by multiple staff.  Reply at 17-18.  Moreover, the

court disagrees with the government that the expenses for one of two paralegals' travel in

June 2018 should be deducted.  Even though neither paralegal billed any time to this case

on that trip, both paralegals' total requested hours account for nearly half of the claimed

hours in this case.  *See* Mot. at 7.  Given their substantial contributions, the court does not

find that the participation of both paralegals in the June 2018 site visit to be unreasonable

or unnecessary.  Finally, the court has already concluded above that Ms. McCulley's

travel in October 2019 was not redundant or unreasonable.  *See supra* Part III.B.2.  For

these reasons, all travel expenses but those related to Mr. Wald's travel are reimbursable.

### b.    Miscellaneous Expenses

The government next challenges $43.91 in expenses requested for in-flight wi-fi

services.  Reply at 20.  The government argues that the documentation provided by

Stimson Lumber does not demonstrate that the wi-fi was being used for work purposes

rather than entertainment purposes.  Resp. at 17.  Stimson Lumber's counsel, in reply,

represents that the wi-fi was being used for work purposes.  Reply at 20.  The court finds

that this representation is sufficient and allows this expense.

### c.    Expert Expenses

The bulk of the costs requested by Stimson Lumber are expert expenses,

amounting to $29,766.00.  Reply at 18.  Stimson Lumber hired two expert appraisers in

this case, Phil Cook and David Matthews.  Mot. at 17-18.  Stimson Lumber explains that

Mr. Cook did a substantial amount of work on the case (and *Loveridge*) before Stimson

Lumber elected to replace Mr. Cook with Mr. Matthews. *Id.* The government does not object to Mr. Cook's early invoices, which amount to $11,766.00. Resp. at 15-16; *see* Mot, Ex. B (listing expenses); Notice, Ex. 2 (same).

Mr. Matthews conducted appraisals for 8 of Stimson Lumber's parcels, before the court ruled on the parties' summary judgment motions. Resp. at 15-16. According to his invoice, Mr. Matthews charged flat fees for each parcel or groups of parcels. *See* Mot., Ex. B-1 at 5. Some parcels or groups of parcels, such as "Parcel 1CD," were "Representative" parcels, for which Mr. Matthews charged a flat fee of $7,500. *Id.* Other groups of parcels were "Non-Representative" parcels, for which Mr. Matthews charged a flat fee of $1,500 because, according to Stimson Lumber, the appraisals for Non-Representative parcels were extrapolated from the Representative parcels. *Id.*; Reply at 19. The total cost for all 8 parcels was $18,000. Mot., Ex. B-1 at 5.

The government objects to the full reimbursement of this $18,000 in appraisal costs. The government first argues that Mr. Matthews' expenses should be reduced to extent that the claims for any parcel he appraised were unsuccessful. Resp. at 15. For example, the government was held not to be liable for parcel group 1CD, and, therefore, the government argues that Stimson Lumber is not entitled to the $7,500 in expenses charged for "Parcel 1CD." *Id.* Deducting all unsuccessful parcels, the government argues that Stimson Lumber is entitled to only $9,750. *Id.* The government then argues that Mr. Matthews' invoice does not provide sufficient detail, such as the number of hours worked, the type of work, or the rate charged, to allow the court to determine whether his appraisal costs are reasonable. *Id.* at 16. The government therefore requests

an additional 50% reduction to the expenses charged by Mr. Matthews, for a total of $4,875 in compensable costs. *Id.* at 16-17.

Stimson Lumber argues that no deductions are warranted. Reply at 18-19. First, Stimson Lumber contends that the appraisals for all parcels were necessary and interrelated, and, therefore, should be fully reimbursed. *Id.* Stimson Lumber points out that Mr. Matthews' appraisals were used for settlement in this case. *Id.* at 19. Stimson Lumber also argues that Mr. Matthews' invoices are supported because Mr. Matthews charged a flat fee per appraisal, and, therefore, there is no other detailed cost information available.[11] *Id.*

Upon consideration of the parties' arguments, the court rejects the government's contention that Mr. Matthews' invoices are not supported by adequate documentation. The case cited by the government in support of its objection involved invoices that did not charge a flat fee. *Preseault*, 52 Fed. Cl. at 679. Stimson Lumber explains that Mr. Matthews charged a flat fee for his appraisals, and, therefore, no other information regarding hourly rates or tasks can be provided. Reply at 19.

In addition, the government does not argue that these flat fees are excessive. *See Bratcher*, 136 Fed. Cl. at 802 (upholding certain expenses where the government did not "support its claims with any evidence that the charges are out of bounds for the services provided"). In fact, Stimson Lumber explains that it chose to switch appraisers from Mr. Cook to Mr. Matthews to save costs because Mr. Cook's estimates were too expensive.

---

[11] Stimson Lumber states that any other costs incurred by Mr. Matthews are included in his invoices for the *Loveridge* case. Reply at 19.

Mot. at 17-18.  Stimson Lumber also states that the appraisals were "extreme[ly] difficult[]" because they involved "timber when Stimson Lumber is almost the only generator of comparable sales."  Reply at 19.  Moreover, the government's own actions demonstrate that these appraisal costs were reasonable.  The government used Mr. Matthews' appraisals for the settlement of the 5 prevailing parcels rather than hiring a joint appraiser.  Reply at 19.  The court therefore finds that no reduction in Mr. Matthews' expenses are necessary for a lack of adequate documentation.

However, the court concludes that some reduction in the requested appraisal expenses is appropriate to account for the lack of success on certain parcels.  This court has previously reduced requested costs to account for unsuccessful claims.  *See Bratcher*, 136 Fed. Cl. at 801 (reducing expenses consistent with the reduction in fees for unsuccessful claims); *Biery*, 2014 WL 12540517, at *8 ("Consistent with the proposed adjustment relating to fees . . . the court in its discretion finds that expenses incurred . . . be reduced by 30% to account for expenses incurred on claims that were unsuccessful."); *Gregory*, 110 Fed. Cl. at 407 ("The Court finds it reasonable to award costs in the same proportion (42.4 percent) as applied for the recovery of attorneys' fees.").  The court recognizes that the appraisals done on successful and unsuccessful parcels are interrelated, in that Mr. Matthews' appraisals of certain parcels were extrapolated from other parcels.  Therefore, the court declines to reduce Mr. Matthews' appraisal costs using the method proposed by the government, which would result in larger reductions where certain unsuccessful parcels happen to be the representative parcels for which Mr. Matthews charged a higher flat fee.  Nonetheless, Mr. Matthews' work is claim-specific.

30

The court therefore, in its discretion, reduces Mr. Matthews' total appraisal costs by 30%. The court concludes that this reduction reasonably accounts for the fact that Stimson Lumber was unsuccessful as to 3 of the 8 parcels appraised, but also acknowledges the interrelated nature of the appraisals for the unsuccessful and successful parcels.  *See Gregory*, 110 Fed. Cl. at 407.  This results in $12,600 in reimbursable costs for Mr. Matthews' appraisal work.

### 2.    Other Reductions for Lack of Success

Finally, the government argues that Stimson Lumber's requested costs—apart from Mr. Matthews' appraisal costs addressed separately above—should generally be reduced for lack of success by the same percentage that the court reduces Stimson Lumber's requested hours for Phases 1, 2, and 3 of this case.  *See* Resp. at 22, 23, 25.  By the court's calculation, the requested costs for Phases 1, 2, and 3 amount to $19,168.61 (excluding Mr. Wald's expenses).  *See* Mot., Ex. B; Notice, Ex. 2.  These costs mostly involve travel and meal expenses.  *See* Mot., Ex. B.  Unlike Mr. Matthews' expert appraisals, these expenses are not segregable by parcel.  While the court recognizes that it has reduced total expenses for lack of success in other cases, upon review, the court does not find that these expenses are unreasonable or subject to reduction, particularly given the ultimate settlement of this case.  *See Thomas*, 2014 WL 1347221, at *4 ("The government argues that, as with reasonable hours, the costs must be adjusted to reflect plaintiffs' unsuccessful claims.  The court has reviewed the cost requests and finds that, given the ultimate settlement in this case, plaintiffs' request for $22,641.61 is reasonable and should be reimbursed without any reduction.").  The court therefore concludes that

these expenses are fully reimbursable, subject to the deductions for Mr. Wald's travel expenses and Mr. Matthews' appraisal work noted above.

## IV.    CONCLUSION

For the foregoing reasons, Stimson Lumber's motion for attorneys' fees and costs, ECF No. 52, is **GRANTED IN PART** and **DENIED IN PART**.  The parties are directed to file a joint status report by **August 13, 2021**, providing an updated calculation of attorneys' fees and costs made in accordance with the instructions in this opinion. Stimson Lumber shall attach to this joint status report documentation supporting any additional requests for attorneys' fees and costs incurred after April 7, 2021.  The parties shall also provide in this joint status report an update on the progress made in the settlement of just compensation and interest in this case and a proposal for further proceedings.

**IT IS SO ORDERED**.

s/Nancy B. Firestone
NANCY B. FIRESTONE
Senior Judge